J-S51033-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| J.L. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| B.L., JR., | : | |
| | : | |
| Appellant | : | No. 1006 MDA 2020 |

Appeal from the Order Entered July 2, 2020
In the Court of Common Pleas of Northumberland County Civil Division at
No(s):  CV-2016-01929

BEFORE:  MURRAY, J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:          **FILED FEBRUARY 05, 2021**

B.L., Jr. (Father) appeals from the order entered in the Northumberland County Court of Common Pleas, denying his petition to modify a child custody order so that he may have primary physical custody of the parties' youngest child, L.L. (Child).  Father avers the trial court abused its discretion in: (1) giving insufficient weight to its finding that J.L. (Mother) and her boyfriend, J.G., supplied alcohol and marijuana to the parties' three older, teenaged children; (2) failing to weigh the harm of separating Child from her three older siblings; and (3) precluding Father, at the custody trial, from examining Mother's boyfriend as to why he lost custody of his own child.  After careful review, we reverse and remand.

Mother and Father are married, but separated and in the process of obtaining a divorce.  N.T. Custody Trial, 6/24/20, at 4.  The parties have four children: E.L., a male born in July 2002; D.L., a male born in November 2003;

M.L., a female born in September 2005; and Child, a female born in November 2015. As the trial court observed, the older children "are much older than [Child], with the closest in age ten years apart." Trial Ct. Op., 9/2/20, at 3 (unpaginated) (footnote omitted).

Mother initiated this custody action by filing a *pro se* complaint on October 31, 2016. Ultimately, the parties reached an agreement, which the trial court entered as a final order on January 19, 2017. The order awarded sole legal and primary physical custody of Child to Mother, and awarded sole legal and primary physical custody of the three older children to Father. The order also permitted Father to relocate to Florida with the older children, and awarded the parties partial physical custody of the child or children not primarily in their care at such times as they could agree.

On September 3, 2019, Father filed a *pro se* petition for special relief, as well as a petition to modify the custody order, requesting sole legal and physical custody of Child. Father alleged that in the summer of 2019, Mother and her boyfriend, J.G., smoked marijuana with the older children while they were in her care, and while Child was present. The trial court entered an interim order on September 5, 2019, awarding Father sole legal and physical custody of Child and scheduling a hearing on the petition for special relief.[1]

---

[1] On the same morning, Schuylkill County Children and Youth Services (CYS) visited Mother's home but did not take the children. N.T., 9/11/19, at 5. Later that day, Father arrived and took custody of Child. *Id.*

The special relief hearing was held on September 11, 2019. Father, Mother, and the three older children testified. We note the children's ages at that time: E.L. — 17; D.L. — 16; M.L. — 13; and Child — 3. In relevant part, all three children testified that Mother and J.G. provided them with marijuana, alcohol, and vaping paraphernalia while they were in Mother's care. N.T., 9/11/19, at 10, 17, 25. E.L. stated he smoked marijuana with Mother and J.G. 15 times, but Child was not in the same room when this occurred. *Id.* at 10, 12. D.L. stated he smoked marijuana or used alcohol while in Mother's care 16 to 20 times, Child was present on 15 of these occasions, and additionally, Child slept in Mother and J.G.'s room while they smoked marijuana. *Id.* at 16-17, 19. M.L. testified that while in Mother's care, she smoked marijuana once or twice but she "vaped a lot." *Id.* at 25. M.L. stated she did not vape or smoke before that summer, and she tried it because Mother "handed it to [her and] said, 'Here. Try this.'" *Id.* at 25. M.L. also described an incident in which J.G. smoked marijuana while driving a five-passenger vehicle with Mother, Child, and the three older children. *Id.* at 31.

Mother denied that she and J.G. provided the children with marijuana. N.T., 9/11/19, at 32. Mother admitted she ingested "marijuana from time to time," but denied doing so in the children's presence. *Id.* at 32-33. Meanwhile, Mother's counsel argued the parties had agreed M.L. would live in Pennsylvania with Mother, but "apparently . . . someone soured on that," and then Father filed the petitions. *Id.* at 7.

At the conclusion of the hearing, the trial court stated: "[A]ccording to the testimony, [M]other shows an extreme lack of any type of proper parental judgment with regard to her children," including Child. N.T., 9/11/19, at 45. The court thus entered an interim order granting Father's petition for special relief and awarding him sole legal and physical custody of Child pending a hearing on his petition to modify.

Mother filed a motion for reconsideration on October 21, 2019, which the trial court did not address specifically. However, the court entered an interim order on November 1st, awarding Mother supervised partial physical custody of Child after Mother passed a drug test. The court returned primary physical custody of Child to Mother in another interim order on December 26th.

On June 24, 2020, the trial court held a custody trial on Father's petition to modify the custody order. By this time, Father was represented by an attorney. Father, Mother, E.L., J.G. (Mother's paramour), and the children's maternal grandmother, D.R. (Grandmother) testified. Relevant to this appeal, Father testified his purpose for seeking primary physical custody of Child was to rectify Child's "sibling separation." N.T., 6/24/20, at 17.

With respect to Father's allegations concerning drug use, E.L. repeated his prior testimony that he smoked marijuana with Mother and J.G. the previous summer. N.T., 6/24/20, at 135. Mother denied that she or J.G. smoked marijuana in the children's presence, and denied they smoked

marijuana at all the prior summer. *Id.* at 105. Mother maintained that CYS searched her house, "didn't find anything," and concluded the claims against her "were unfounded." *Id.* at 121. Mother passed drug tests and completed a drug and alcohol evaluation, which reported she did not "meet the criteria for treatment." *Id.* at 120, 122. Mother added the drug and alcohol evaluator "looked at me and assumed that I didn't [use drugs.] She said I wasn't the type." *Id.* at 127. However, on cross-examination, Mother admitted the evaluation was based on her own report that she did not use drugs. *Id.* at 126-27.

J.G. also denied he smoked marijuana in the children's presence or smoked marijuana at all the prior summer. N.T., 6/24/20, at 89. However, he obtained a medical marijuana card in November 2019 and now smokes marijuana "[s]everal times a week." *Id.* at 88-90. Mother likewise testified that J.G. smokes marijuana three to four times a week, but stated he "knows not to do it around" Child. *Id.* at 129.

Also relevant to this appeal, J.G. testified he has a 19 year old son and a nine year old daughter. His daughter lives in Chicago, and her mother (J.G.'s "ex-wife"[2]) is in prison in Texas. N.T., 6/24/20, at 87-88. J.G. stated he and his ex-wife were living in Florida when they separated, "her brother is a

---

[2] Mother referred to J.G.'s daughter's mother as J.G.'s "wife." N.T., 6/24/20, at 131. For ease of discussion, we adopt the term "ex-wife" when referring to her.

millionaire in Chicago, and basically got a lawyer and got [J.G.'s daughter] to go to Chicago." *Id.* at 86. When asked why he did not have custody of his daughter, J.G. replied his ex-wife's brother had financial means to hire a lawyer, but J.G. did not.[3] *Id.*

Meanwhile, Mother testified J.G. was convicted of assault when he was 18 or 19 years old "for beating up a drug dealer" and was incarcerated briefly.[4] N.T., 6/24/20, at 128-29. When asked whether she believed J.G. posed a danger to Child, Mother replied she did not, as J.G. is loving and caring to Child. *Id.* at 131. Mother explained, "He feel[s] this is his second chance, you know, because he was raising his daughter all the way up until she was two, and then his wife created a bomb shell on him and he lost all of that." *Id.* On cross-examination, Father inquired what "bomb shell" caused J.G. to lose custody. *Id.* at 132. Mother declined to respond, and Father requested the trial court to direct her to answer the question. *Id.* The court asked Mother, "How long ago was this event"," and Mother replied seven years earlier. *Id.* The court then ruled the event was "no longer relevant." *Id.*

On July 2, 2020, the trial court entered the underlying order, denying Father's modification petition and directing the January 19, 2017, order —

---

[3] J.G.'s testimony appears to indicate his daughter lives in Chicago with her maternal uncle. *See* N.T., 6/24/20, at 88.

[4] Our review of the record does not reveal J.G.'s current age.

awarding Mother sole legal and primary physical custody of Child — to remain in effect.  The order included an analysis of the custody factors enumerated at 23 Pa.C.S. § 5328(a).  Of note, the order briefly addressed Father's allegations of marijuana use as follows:

**14.  The history of drug or alcohol abuse of a party or a member of a party's household.**

This factor favors Father as this Court previously heard credible testimony that Mother's paramour is a frequent user of marijuana in front of the teenagers, and Mother allowed their use of marijuana when she had the teenagers in her custody.  Mother's paramour has now obtained a medical marijuana card, but it does remain a concern to this Court with regard to his use with a young child in the household.

Order, 7/2/20, at 3 (unpaginated).  Nevertheless, in denying Father's petition to modify custody, the court emphasized Mother's history as Child's primary caregiver, Child's strong bond with Mother, and the difficulty that Child would experience adjusting to a life away from Mother.  *Id.* at 2-4.

Father timely filed a notice of appeal, along with a concise statement of errors complained of on appeal.  The trial court has issued an opinion.

Father presents the following claims on appeal:

[1.] Whether the trial court abused its discretion in awarding primary physical custody of [Child] to [Mother] when it did not give sufficient weight to the drug use of [Mother] and her boyfriend and their proven conduct of supplying the parties['] children with marijuana?

[2.] Whether the trial court abused its discretion in awarding primary physical custody of [Child] to [Mother] by not weighing the harm of continuing the separation of the siblings more heavily against her?

- 7 -

[3.] Whether the trial court abused its discretion in awarding primary physical custody of [Child] to [Mother] by not permitting Father's counsel to thoroughly question [Mother's] boyfriend about the reasons and circumstances that he lost custody of his own child?

Father's Brief at 8.

We note the relevant standard of review:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

***V.B. v. J.E.B.***, 55 A.3d 1193, 1197 (Pa. Super. 2012) (citations omitted).

"When a trial court orders a form of custody, the best interest of the child is paramount." ***S.W.D. v. S.A.R.***, 96 A.3d 396, 400 (Pa. Super. 2014). Section 5328(a) of our Domestic Relations Code sets forth factors that a court must consider when discerning a child's best interests:

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another.  A party's effort to protect a child from abuse by

another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a)(1)-(16).  We point out the statute requires a court to "giv[e] weighted consideration to those factors which affect the safety of the child."  *Id.*

In his first issue, Father argues that in awarding Mother primary physical custody of Child, the trial court abused its discretion by failing to give sufficient weight to Mother's and J.G.'s drug use and "and their proven conduct of supplying the parties['] children with marijuana."  Father's Brief at 10.  The trial court concisely addressed this issue as follows:

> This court previously recognized the problem that existed in late summer of 2019 as to the other children.  **Mother has progressed; recognized the concern**, and at this time is not continuing with the prior behavior.  The closeness of the bond between Mother and [Child] outweighs any past concerns in this regard.[ ]

*See* Trial Ct. Op., 9/2/20, at 2-3 (unpaginated) (emphasis added).

Father cites the underlying July 20, 2020, order, in which the trial court specifically found credible the testimony that J.G. "is a frequent user of marijuana in front of [the older children], and Mother allowed their use of marijuana when she had [them] in her custody."  Father's Brief at 10-11,

- 10 -

*quoting* Order, 7/20/20, at 3. Father contends the court then "inexplicably seemed to forget this testimony when it returned physical custody of [Child] to Mother." Father's Brief at 10. Father additionally avers the court's conclusion — that Mother has "progressed" and "recognized the concern" — is not supported by the record, where Mother and J.G. "continued to deny" the allegations they provided alcohol and marijuana to the children, and they themselves used marijuana in the children's presence. *Id.* at 11. Finally, Father cites the trial court's concern, articulated in the underlying order, over J.G.'s continued marijuana use. "Father does not deny . . . Mother's bond with and love for" Child, but he contends this bond "does not vitiate the severity of illegal drug usage with and around children." *Id.* at 12. Father concludes this Court should reverse and remand "for further consideration of the drug usage issue." *Id.* After careful review, we agree.

In the underlying custody order, the trial court explicitly found credible the testimony that J.G. "is a frequent user of marijuana in front of the teenagers, and Mother allowed their use of marijuana." Order, 7/2/20, at 3. We further note M.L.'s testimony that Mother permitted all four children, as well as herself, to ride in a five-passenger car, driven by J.G. as he smoked marijuana. M.L. cited this incident when asked to "explain . . . some other things that [she] thought were wrong." N.T., 9/11/19, at 29-30. Because this conduct endangered Child's safety, the trial court was required to give it weighted consideration. *See* 23 Pa.C.S. § 5328(a) (court must give "weighted

consideration to those factors which affect the safety of the child"). However, neither the July 2, 2020, custody order nor the court's opinion indicates whether the court applied such weighted consideration.

Furthermore, we agree with Father that the record does not support the trial court's finding that "Mother has progressed[ and] recognized the concern." **See** Trial Ct. Op. at 2-3. At the September 11, 2019, special relief hearing, Mother denied all of Father's allegations concerning drug use. N.T., 9/11/19, at 32. We emphasize that at the June 24, 2020, custody trial, Mother continued to deny she or J.G. provided marijuana to the children, and denied she or J.G. themselves ingested marijuana the entire summer of 2019. N.T., 6/24/20, at 89-90, 105. Thus, Mother has not acknowledged any wrongdoing — which, we reiterate, the court specifically found she engaged in. Far from indicating progress or recognition of Father's or the court's concerns, Mother refused to admit she did anything wrong or take responsibility for her actions. We can discern no basis for the court to conclude that Mother had seen the error of her ways or that her past behavior would not recur. Therefore, we vacate the July 2, 2020, order and remand for the court to reevaluate the Section 5328(a) factors, mindful that it must place weighted consideration on the threat that Mother's conduct poses to Child's safety. **See** 23 Pa.C.S. § 5328(a).

Father's second claim on appeal is that the trial court abused its discretion by not placing greater weight on Child's relationships with her

siblings pursuant to Section 5328(a)(6) ("The child's sibling relationships"). Father's Brief at 12-13. We note the trial court found, under the Section 5328(a) factors, that "[C]hild has a normal sibling relationship. However, her siblings are more than [10] years older than her." Order, 7/2/20, at 2. The court also found, and Father concedes, that he himself agreed to the 2017 custody order, which separated the children. Father's Brief at 13, *citing* Trial Ct. Op. at 3. Nevertheless, Father claims, "the Court was obligated to carefully consider this factor." Father's Brief at 13.

Because we remand for the trial court to reconsider, and specifically to **reweigh**, the various Section 5328(a) factors, we do not reach the merits of this claim. On remand, the court shall reweigh all the factors.

Father's final claim is that the trial court abused its discretion by not permitting cross-examination regarding why J.G. lost custody of his daughter. Father's Brief at 13-14. He directs our attention to the exchange, summarized above, during which he asked Mother to explain the "bomb shell" she claimed resulted in J.G. losing custody. Mother refused to respond, and the court ruled that the testimony was irrelevant, as the event occurred seven years earlier. N.T., 6/24/20, at 132. Father suggests that the "logical implication is that J.G. was accused of abuse or other misconduct." Father's Brief at 13-14. He adds the court was obligated to consider past abuse committed by a member of Mother's household pursuant to Section 5328(a)(2). *Id.* at 14.

At this juncture, we consider Mother's assertion that Father has waived this claim for failure to make any objection to the trial court's preclusion of testimony. **See** Mother's Brief at 10, *citing* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.") Mother's Brief at 10. Mother contends Father also "failed to call [J.G.] back to the stand for rebuttal[,] ask for a brief recess to seek clarity of [J.G.'s] criminal record," or present his own evidence of J.G.'s criminal record. **Id.** at 10-11.

Here, Father's counsel requested the trial court to instruct Mother to answer his question regarding what "bomb shell" caused J.G. to lose custody of his daughter, and the court ruled that the requested testimony was irrelevant. N.T., 6/24/20, at 132. The issue was clearly "raised in the trial court" and no further action was necessary to preserve it for our review. **See** Pa.R.A.P. 302(a); Pa.R.E. 103(b) ("Once the court rules definitively on the record — either before or at trial — a party need not renew an objection or offer of proof to preserve a claim of error for appeal."). Accordingly, we consider Father's claim on the merits.

We note the relevant standard of review:

[I]n reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law. A trial court has wide discretion in ruling on the relevancy of evidence and its ruling will not be reversed absent an abuse of discretion.

***K.T. v. L.S.***, 118 A.3d 1136, 1165 (Pa. Super. 2015) (citation omitted).

Pennsylvania Rule of Evidence 401 provide that evidence is relevant if it has "any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action." Pa.R.E. 401(a)-(b). Moreover, "[a]ll relevant evidence is admissible, except as otherwise provided by law." Pa.R.E. 402.

Furthermore, at the time of the custody trial, Section 5329 of the Divorce Code provided:

**§ 5329. Consideration of criminal conviction**

**(a) Offenses.—**Where a party seeks any form of custody, the court shall consider whether that party or member of that party's household has been convicted of or has pleaded guilty or no contest to any of the offenses in this section or an offense in another jurisdiction substantially equivalent to any of the offenses in this section. The court shall consider such conduct and determine that the party does not pose a threat of harm to the child before making any order of custody to that party when considering the following offenses:

[list of criminal offenses.]

23 Pa.C.S. § 5329(a), *amended June 5, 2020*, *effective Aug. 4, 2020*.[5]

In its opinion, the trial court briefly addressed Father's claim as follows: "Father does not reference any of the statutory factors to which such an

---

[5] We note Section 5329 was amended June 5, 2020, with an effective date of August 4, 2020. ***See*** Act 2020-32 (S.B. 275), § 3, approved June 5, 2020, eff. August 4, 2020. Because the custody trial was held on June 24, 2020, the amendment did not apply.

- 15 -

inquiry as to events so long ago is helpful to the court's determination and, thus, relevant." Trial Ct. Op. at 4. We disagree with this analysis.

The trial court's opinion suggests the age of the "bomb shell" event, alone, renders it irrelevant as a matter of law. *See* Trial Ct. Op. at 4. However, the court does not cite, and we are not aware of, any legal authority in support. To the contrary, this Court has stated that "remoteness [in time] is often a question of weight, not admissibility." ***Commonwealth v. Showers***, 681 A.2d 746, 752 (Pa. Super. 1996). Furthermore, Section 5329 provides "the court **shall** consider whether [a] member of [a] party's household has been convicted of" certain criminal offenses." 23 Pa.C.S. § 5329(a). This statute sets no time frame for the consideration of the enumerated criminal convictions. ***See id.***

We do not speculate on what "bomb shell" caused J.G. to lose custody of his daughter. *See* Father's Brief at 13-14 ("The logical implication is that J.G. was accused of abuse or other misconduct."). In this same vein, we conclude the trial court abused its discretion in excluding testimony about the alleged "bomb shell," based solely on the fact it occurred seven years earlier, without hearing **any** explanation about it. ***See K.T.***, 118 A.3d at 1165. In addition, it was unreasonable for the court to require Father to cite particular statutory factors without knowing what the "bomb shell" was, as different factors relate to different types of misconduct. *See* 23 Pa.C.S. § 5328(a)(1)-(16).

It is important to emphasize a trial court in a custody case must give "weighted consideration to those factors which affect the safety of the child[.]" 23 Pa.C.S. § 5328(a). In the case at bar, the trial court heard testimony that although Mother and Child lived with Grandmother, they also stay at J.G.'s home "a lot," and Mother testified she and Child would be moving in with J.G. "[h]opefully as soon as possible."[6] N.T., 6/24/20, at 72, 91, 93. It was critical under these circumstances for the court to consider whether J.G. posed a threat of harm to Child. Because the court prevented Father's counsel from revealing what "bomb shell" caused J.G. to lose custody of his daughter, it could not make a fully informed decision on that issue. *See O.G. v. A.B.*, 234 A.3d 766, 779-80 (Pa. Super. 2020) (trial court failed to adequately review whether the father's in-home tenant posed a safety risk to the children, where the tenant had a Protection From Abuse order entered against him as well as past criminal charges, the most recent of which he reportedly incurred about six years earlier). We therefore vacate the court's July 2, 2020 order on this basis as well and remand for an additional hearing addressing J.G.'s loss of custody.

---

[6] We further note the trial court acknowledged Mother's plan to move in with J.G. in its findings, but weighed Section 5328(a)(5) ("The availability of extended family"), in her favor on the basis that Child benefited from living in Mother's current home with Mother's parents. *See* Order, 7/2/20, at 2 ("This factor favors Mother because she is currently living with her parents, and the child is living with her maternal grandparents as to which there is a very close relationship.")

Based on the foregoing analysis, we reverse the court's July 2, 2020, custody order and remand for further proceedings consistent with this memorandum. On remand, the court shall hold a custody hearing, at which the parties may present evidence or testimony concerning the reasons J.G. lost custody of his daughter. The court shall also consider the criminal history of any members of the parties' households that is relevant to the court's consideration under Sections 5328(a) and 5329. The court must then conduct a new analysis of the Section 5328(a) factors, placing weighted consideration on the factors which may affect Child's safety, and enter a new custody order.

Order reversed. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 02/05/2021